UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:20-cr-26-BJD-JRK

SAMUEL ARTHUR THOMPSON

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR RETURN OF SEIZED PROPERTY**

The United States of America files this response in opposition to Defendant's Motion for Return of Seized Property, (Doc. 49, hereinafter, "Defendant's Motion"), which was filed on May 3, 2021. In his motion, defendant requests the return of two cellular telephones that were seized from him upon his arrest on January 31, 2020. The cellular telephones, and in particular defendant's iPhone XR, have evidentiary value in this case and therefore the United States opposes returning them to defendant.

**PERTINENT FACTS**

On July 11, 2019, Special Agent Frank Norris of the FBI obtained a federal warrant to search defendant's residence. *See* Case. No. 3:19-mj-1251-MCR. On July 17, 2019, federal agents executed the residential search warrant. Defendant was at the residence at the time the search warrant was executed. Defendant's iPhone 7 was in plain view in his hand while he was inside of the residence, and the phone was seized as evidence by an FBI agent. Additionally, approximately 20

other computers or electronic storage media were seized from the residence.  While agents were at the residence, defendant informed them that he possessed another computer that was located in an off-site storage unit, and defendant consented to the seizure and search of that computer without limitation.

Upon reviewing the contents of the seized computers, agents identified child sex abuse material on defendant's iPhone 7, on the computer that had been seized (by consent) from the storage unit, and on another computer located inside of the residence.[1]  Additional warrants authorizing the search of each seized electronic storage medium (other than the computer in the storage unit, the search of which defendant had consented to) for evidence related to child sex abuse material were sought and issued.

After the execution of the residential search warrant, defendant fled the country to the Philippines, via the Republic of Korea, on July 26, 2019.  Defendant, a registered sex offender, failed to report his international travel in violation of the Sex Offender Registration and Notification Act ("SORNA").  Further investigation

---

[1] The child sex abuse material found on the computer located in the residence consists of a 2-second video of a pre-pubescent male child who is known to defendant.  The video is zoomed in on the child's penis, making it the focal point of the video.  Subsequent investigation of this video by FBI agents has indicated that the child's mother may have taken the video in order to document the child's surgical scars on his genital area.  However, the video is child sex abuse material in that it meets the criteria for lascivious exhibition of the child's genitals.

revealed that defendant had also traveled to the Bahamas from July 6, 2019, through July 14, 2019, without updating his sex offender registration.

On August 16, 2019, the State Department revoked defendant's passport, and on September 4, 2019, defendant was arrested by the Philippines Bureau of Immigration Fugitive Search Unit based on a deportation warrant.

On January 31, 2020, FBI Special Agent Daniel Moxley assisted with executing a federal arrest warrant for defendant at the Los Angeles International Airport, where defendant first arrived back in the United States after having been deported from the Philippines. Defendant was escorted to a processing area by agents with Customs and Border Protection ("CBP"). The CBP agents advised Special Agent Moxley that defendant possessed an orange backpack during his flight from the Philippines to Los Angeles.

CBP agents conducted a search incident to arrest of defendant, at which time they recovered the iPhone XR and the other phone that are the subject of this motion. The iPhone XR was concealed in defendant's pants. Defendant was informed that the phones would be seized as evidence. Defendant remarked to Special Agent Moxley that he had obtained the iPhone XR "the day Frank took my other iPhone." The undersigned believes that defendant was referring to the seizure of defendant's iPhone 7 at the time the residential search warrant was executed in July 2019. Defendant was asked to unlock the iPhone XR so that a border search could be conducted; defendant refused to unlock the iPhone XR. The iPhone XR

3

initially was stored at the FBI Los Angeles Evidence Control Room, but was later shipped to Jacksonville. It is now stored in the FBI Jacksonville Evidence Control Room.

Upon receiving the iPhone XR at the FBI Jacksonville Evidence Control Room on February 13, 2020, an FBI Computer Analysis Response Team ("CART") Forensic Examiner informed Special Agent Moxley that at that time, a forensic capability to search the locked iPhone XR did not exist. The iPhone XR was therefore stored as evidence until such time as a technological advance would allow for its search.

On October 16, 2020, Special Agent Moxley conferred with a Digital Forensics Detective with the St. Johns County Sheriff's Office with regard to whether the iPhone XR could be searched at that time. The detective informed Special Agent Moxley that at that time, a forensic capability to search the locked iPhone XR did not exist.

On April 22, 2021, at a discovery status conference in this case, defendant announced, for the first time, through his attorney, that he wished for the iPhone XR to be returned. Doc. 48. Defendant filed a formal motion on May 3, 2021, requesting the return of the iPhone XR. *See generally* Defendant's Motion. Prior to the filing of the motion, the undersigned offered to provide an image of the phone to defense counsel if defendant would consent to its search and provide the password; defendant declined. Defendant's Motion at 1-2.

On May 5, 2021, Special Agent Moxley again consulted with the CART forensic examiner regarding whether there had been any technological advances that would allow for the search of the locked iPhone XR.  The CART forensic examiner informed Special Agent Moxley that he believed the locked iPhone XR could now be searched.  The United States therefore expects to apply for a warrant to search the locked iPhone XR in the very near future.  Assuming a warrant is obtained, the United States will produce an image of the iPhone XR in discovery as soon as practicable (assuming that the phone does not contain contraband, in which case counsel may make an appointment to review it at the FBI).

Defendant presently is charged in a Superseding Indictment with six counts: Count One charges that defendant knowingly possessed child sex abuse material on a custom built desktop computer on December 2, 2017; Count Two charges that defendant knowingly received child sex abuse material on January 26, 2018; Count Three charges that from at least September 16, 2018, through December 2, 2018, defendant caused transmissions of commands to protected computers without authorization causing damage of at least $5000; Count Four charges the SORNA violation related to the defendant's travel to the Bahamas; Count Five charges possession of a firearm by a convicted felon; and Count Six charges the SORNA violation related to defendant's travel to the Republic of Korea and the Philippines. Doc. 39.

## MEMORANDUM OF LAW

Defendant argues that "no action" has been taken to determine whether items of evidentiary value exist on the iPhone XR. That is false. As described above, Special Agent Moxley on multiple occasions has consulted with computer forensics experts to determine whether there was a technological capability to search the iPhone XR, given that it was locked and password protected. Until less than one week ago, the answer to that question has been "no."

Moreover, it is evident (and defendant appears to agree in his motion) that the iPhone XR will contain evidence of at least one crime with which defendant is charged – the SORNA violation during which he traveled to the Republic of Korea and the Philippines (Count Six). As defendant himself argues, there may be "text message conversations [that] might corroborate the testimony of a defense trial witness," emails that "may serve a similar purpose," calendar entries that "may corroborate witness recollections of particular dates or times," contact information for potential witnesses, and "Geo data [that] may provide indicators of Mr. Thompson's physical whereabouts on a certain date or time." Defendant's Motion at 3.

Based on defendant's indication to Special Agent Moxley that he obtained the iPhone XR the day that the iPhone 7 was seized from him during the residential search warrant, and defendant's possession of the iPhone XR upon his arrival in the United States after being deported from the Philippines, there is probable cause to

6

believe that the iPhone XR will contain evidence of defendant's geographic location while he was traveling internationally, which is pertinent to Count Six. Additionally, based on the fact that the iPhone XR replaced defendant's iPhone 7 – which contained a cache of child sex abuse material – and that defendant possessed three devices in total containing child sex abuse material, there is also probable cause to search the iPhone XR for evidence of his possession of child sex abuse material.

Finally, defendant's argument that he "clearly has a possessory interest in" the phone is unavailing. Defendant is not just the subject of a wide-ranging federal investigation, but is indicted and has been charged since before his arrest and the contemporaneous seizure of the phones. Therefore the United States' interest in searching the phones and retaining them as evidence is strong, and thus the delay in searching the phones is reasonable. *United States v. Laist*, 702 F.3d 608, 613-14 (11th Cir. 2012) ("government's legitimate interest in holding the property as evidence" is a factor in whether a delay in seeking a warrant was reasonable). Moreover, as described above, Special Agent Moxley has repeatedly inquired regarding the technological capability to search the phone and, until recently, has been informed that such capability did not exist. Additionally, defendant has been detained for the entirety of the time that the subject phones have been in FBI custody, and therefore his possessory interest in the phones is not substantial because he cannot possess them while detained. *United States v. Shaw*, 531 Fed. App'x 946, 949 (11th Cir. 2013) (delay in seeking a warrant was not unreasonable where defendant was in

custody through the period of delay and could not have physically possessed the item). Defendant also has not made any claim or request for the return of the phone until April 22, 2021, nor has anyone else acting on his behalf.

Defendant makes his motion under Federal Rule of Criminal Procedure 41(g), claiming that he has a possessory interest in the phones and "clean hands." A "deprivation of property" has occurred, under Rule 41(g), has occurred if the United States holds lawfully seized property beyond the time that it is needed for investigative or prosecutorial purposes. *United States v. Beach*, 113 F.3d 188, 189-90 (11th Cir. 1997).[2] That has not happened in this case, as defendant's case has not yet proceeded to trial (much less completed the process for appeals and collateral attacks), and the United States continues to need the phones for investigative and prosecutorial purposes.

As defendant notes, he must have "clean hands" in order to be entitled to relief. *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005). "The unclean hands doctrine proscribes equitable relief when, but only when, an individual's misconduct has immediate and necessary relation to the equity that he seeks." *Henderson v. United States*, 575 U.S. 622, 625 n.1 (2015). "The doctrine might apply, for example, if a felon requests the return or transfer of property used in furtherance

---

[2] Defendant also makes refence to the Civil Asset Forfeiture Reform Act of 2000 as a basis for his motion. However, the phones are seized as evidence, not for civil forfeiture.

of his offense." *Id.* (citing *United States v. Kaczynski*, 551 F.3d 1120, 1129-30 (9th Cir. 2009) and describing that the Unabomber had unclean hands to request the return of bomb-making materials).   Here, the phones that defendant seeks facilitated and were used in furtherance of his SORNA offense, in addition to containing evidence of that offense.   Defendant does not have clean hands.

In any event, as described herein, even if defendant had made a showing of entitlement to relief (which he has not), that showing is rebutted by the fact that the United States has a legitimate reason to keep the property.   *United States v. Garcon*, 406 F. App'x 366, 370 (11th Cir. 2010) (fact that property may possibly be used as evidence is a legitimate reason to keep the property).

## CONCLUSION

The United States has a legitimate and compelling interest in retaining the phones as evidence and will imminently seek a warrant to search the iPhone XR. Defendant has no possessory interest in the phones, and in any event, has unclean

9

hands given that the phones facilitated at least one of the charged offenses.

Defendant's motion for return of property should be denied.

                                             Respectfully submitted,

                                             KARIN HOPPMANN
                                             Acting United States Attorney

                       By:    */s/ Laura Cofer Taylor*
                            LAURA COFER TAYLOR
                            Assistant United States Attorney
                            USAO No. 170
                            300 N. Hogan Street, Suite 700
                            Jacksonville, Florida 32202
                            Telephone:    (904) 301-6300
                            Facsimile:     (904) 301-6310
                            E-mail:   laura.c.taylor@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Eric Roper, Esq.

*s/ Laura Cofer Taylor*
LAURA COFER TAYLOR
Assistant United States Attorney