UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:20-cr-26-BJD-JRK

SAMUEL ARTHUR THOMPSON

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS AND REQUEST FOR *FRANKS* HEARING

The United States of America files this response in opposition to Defendant's Motion to Suppress and Request for Franks Hearing, (Doc. 42, hereinafter, "Defendant's Motion"), which was filed on April 13, 2021.   Defendant has not made the required threshold showing that would entitle him to a *Franks* evidentiary hearing, and none should be granted.   Furthermore, the other grounds for relief that defendant asserts in his motion – that the search warrant for his residence was not sufficiently particular and was overbroad, that the search exceeded the scope of the warrant, and that he was not provided with a copy of the warrant during the search – are both factually and legally unfounded.   His motion should therefore be denied.

### PERTINENT FACTS

As described in Special Agent ("SA") Frank Norris's affidavit (hereinafter, "SA Norris Affidavit"), attached to Defendant's Motion, the initial investigation of this case arose after the Jacksonville Jaguars reported to the Federal Bureau of Investigation ("FBI") in 2018 that defendant had been accessing a secure computer

network located at the Jaguars' stadium during the 2018 National Football League season.   SA Norris Aff. at 3-4.   Defendant had previously been employed as a contractor for the Jaguars with responsibility for the video board network, known as a "Jumbotron," but his contract was not renewed after it expired in early 2018.   *Id.* at 4-5.

The network intrusions that SA Norris was investigating had occurred well after the expiration of defendant's contract with the Jaguars, on September 16, 2018, November 18, 2018, and December 2, 2018.   *Id.* at 6.   SA Norris described that the network intrusions "resulted in the inability for the video board system operators to display the desired content," which SA Norris characterized as a form of denial-of-service (or "DoS") attack.   *Id.* at 6-7.   The affidavit explained that "[a] DoS attack occurs when legitimate users are unable to access information systems, devices, or other network resources due to the actions of a malicious cyber threat actor."   *Id.* at 7.   SA Norris described that the Jaguars' investigation revealed that the network intrusions and outages had been the result of a device named MIRA9120 sending commands.   *Id.* at 7.   A review of MIRA9120 revealed that software called TeamViewer – which allows for remote access to a computer – had been installed on MIRA9120, but the user who had installed TeamViewer on MIRA9120 had disabled connection logging.   *Id.* at 8.

SA Norris described in his affidavit that on December 3, 2018, the Jaguars disconnected MIRA9120 from the video board network and enabled connection

logging in an attempt to discover any new connections made during an upcoming event (which was an NFL game) on December 16, 2018.   *Id*. at 8.   On December 16, 2018, the TeamViewer log file recorded that a user logged into MIRA9120 using a particular IP address.   *Id*. at 10.   A subpoena to Comcast Cable showed that that IP address was assigned to Jean Louise Puckett at 113 Marsh Island Circle, St. Augustine, Florida.   *Id*. at. 11.   This address was also defendant's residence.   *Id*. at 11-12.   FBI's investigation also revealed that a Dropbox.com account that was attributed to defendant was logged in on MIRA9120 during the same timeframe that TeamViewer was installed on MIRA9120.   *Id*. at 9-11.

Based on the investigation described above, and as laid out in greater detail in his affidavit, on July 11, 2019, SA Norris obtained a federal warrant to search the 113 Marsh Island Circle residence.   *See* Case. No. 3:19-mj-1251-MCR.   The Attachment B to the warrant authorized the seizure of "[c]omputers and electronic storage media" and further authorized the search of any computers or electronic storage media seized for a specific list of items of evidentiary value enumerated in paragraph 4 of Attachment B.

On July 17, 2019, federal agents executed the residential search warrant. Defendant was at the residence at the time the search warrant was executed. Defendant's iPhone 7 was in plain view in his hand while he was inside of the residence, and the iPhone 7 (which meets the definition of a computer authorized to be seized by the warrant) was seized by SA JulianCarl Slaughter.   Additionally,

approximately 20 other computers or electronic storage media were seized from the residence.   While agents were at the residence, defendant informed them that he possessed another computer that was located in an off-site storage unit, and defendant consented to the seizure and search of that computer without limitation. Agents also seized a firearm as contraband based on the fact that defendant is a convicted felon.   Upon completing the search, agents left a copy of the warrant with its attachments on a table inside of the residence and took a photo of it.

While reviewing the contents of the seized computers, agents identified child sex abuse material on defendant's iPhone 7, on the computer that had been seized (by consent) from the storage unit, and on another computer located inside of the residence.   Additional warrants authorizing the search of each seized electronic storage medium (other than the computer in the storage unit, the search of which defendant had consented to) for evidence related to child sex abuse material were sought and issued.

After the execution of the warrant, defendant fled the country to the Philippines, via the Republic of Korea, on July 26, 2019.   Defendant, a registered sex offender, failed to report his international travel in violation of the Sex Offender Registration and Notification Act ("SORNA").   Further investigation revealed that defendant had also traveled to the Bahamas from July 6, 2019, through July 14, 2019, without updating his sex offender registration.

Defendant presently is charged in a Superseding Indictment with six counts: possession of child sex abuse material (Count One); receipt of child sex abuse material (Count Two); causing transmissions of commands to protected computers without authorization (Count Three); a SORNA violation related to the defendant's travel to the Bahamas (Count Four); possession of a firearm by a convicted felon (Count Five); and a SORNA violation related to defendant's travel to the Republic of Korea and the Philippines (Count Six).   Doc. 39.   Defendant had his initial appearance on the original Indictment on January 31, 2020, upon his arrival in California after having been deported from the Philippines.   Doc. 3a.

## MEMORANDUM OF LAW

I. **Defendant is required to make a substantial preliminary showing of entitlement to a *Franks* evidentiary hearing, which he has not done.**

The primary argument defendant advances in his motion is that he is entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to probe the validity of the residential search warrant.   As defendant acknowledges, he must make "an offer of proof" as part of his substantial preliminary showing of entitlement to an evidentiary hearing.   Defendant's Motion at 7 (citing *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007)).   That substantial preliminary showing must demonstrate "that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006).

5

As the Eleventh Circuit has explained, "the substantiality requirement is not lightly met," and

> [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.   There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by a clear offer of proof.   They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.   Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Arbolaez*, 450 F.3d at 1294 (quoting *Williams v. Brown*, 609 F.2d 216, 219 (5th Cir. 1979) (in turn quoting *Franks*, 438 U.S. at 171)).   Absent an affidavit or sworn statement alleging that the affiant knowingly or recklessly included false statements, defendant is not entitled to an evidentiary hearing.   *United States v. Flowers*, 531 Fed. App'x 975, 981 (11th Cir. 2013) (upholding denial of *Franks* hearing where defendant "provided no evidence that established [the affiant] either intentionally or recklessly omitted these facts" and noting that "the *Franks* Court identified 'affidavits or sworn or otherwise reliable statements of witnesses'" as examples of supporting proof); *United States v. Leach*, 498 Fed. App'x 915, 917 (11th Cir. 2012) (defendant must support allegations of falsity "by an offer of proof, including affidavits or sworn or otherwise reliable statements of witnesses"); *United States v. Cha*, 431 Fed. App'x 790, 796 (11th Cir. 2011) (no error in denial of *Franks* hearing where attacks on the affidavit "were conclusory and unsupported by any proof"); *Arbolaez*, 450 F.3d at

6

1294 (defendant "failed to make the necessary 'substantial preliminary showing,'"
and it was therefore not error for the district court to have denied a *Franks* hearing,
where "[t]here [was] no affidavit or otherwise sworn statement"); *United States v.
Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983) (*Franks*-based suppression motion
must be accompanied by an offer of proof that the affiant intended to mislead the
magistrate judge).   Where the disputed information came from an informant, "the
defendant must show that it is the agent, and not the informant, who has made the
misrepresentations."  *United States v. Novaton*, 271 F.3d 968, 988 (11th Cir. 2001);
*United States v. De Aza*, 825 Fed. App'x 709, 711 (11th Cir. 2020) ("[A] defendant
may impeach only the affiant's statement, not the informant's statement." (citing
*Novaton*, 271 F.3d at 986)).   The statement of a defense attorney in a motion for a
*Franks* hearing, unless supported by an affidavit or other proof, will not contribute to
defendant's required "offer of proof."   *United States v. Underwood*, No. 8:11-cr-95-T-
26TBM, 2011 Wl 2036498 (M.D. Fla. May 24, 2011) ("[T]he allegations advanced
by Defendant's attorney, without more, cannot be considered by the Court in making
up for" the lack of "affidavits or reliable witness statements").

　　　If defendant is able to establish the first prong of *Franks* – that is, that there
were deliberate or reckless misrepresentations or omissions in the affidavit – he still
must carry the burden of establishing that absent those misrepresentations or
omissions there would not have been probable cause.   *Leach*, 498 Fed. App'x at 917
(citing *Novaton*, 271 F.3d at 987).   As the Eleventh Circuit has explained, "[t]hat is

the test of materiality, and materiality is essential no matter how deliberate or reckless the misrepresentations were." *Novaton*, 271 F.3d at 987.  "When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false and misleading." *De Aza*, 825 Fed. App'x at 711 (quoting *United States v. Barsoum*, 763 F.3d 1321, 1328-29 (11th Cir. 2014)).  Defendant will be entitled to a hearing only if he can "show that, 'absent those misrepresentations or omissions, probable cause would have been lacking.'" *Id.* (quoting *Barsoum*, 763 F.3d at 1329, and citing *Novaton*, 271 F.3d at 986).

Defendant's motion for a *Franks* hearing is insufficient for several reasons. First, although defendant submitted an affidavit with his motion, the affidavit only addresses a handful of points pertinent to defendant's request for a *Franks* hearing. Several factual points asserted by defendant in the motion itself are entirely unsupported by any offer of proof.  Second, defendant does not make even a bald assertion in his affidavit – or in his motion – that any inaccuracies in SA Norris's affidavit were deliberately or recklessly false.  Third, even if the Court assumed that every fact defendant asserts is in fact false, and even if the court were to assume – without any offer of proof – that these false representations and omissions were made deliberately or recklessly, defendant still is not entitled to an evidentiary hearing because probable cause still would have existed for the search warrant.

8

A.    <u>Defendant has failed to support his assertions with a sufficient offer of proof.</u>

Beginning on page 7 of Defendant's Motion, he makes several claims of falsity in SA Norris's affidavit.   The *only* support defendant provides as an offer of proof is an affidavit for which he himself is the affiant.   Doc. 42-2.   The following are the items that defendant submits were false and that he has supported with his affidavit:

1.   Defendant disputes whether his last date of employment for the Jaguars was February 23, 2018, or March 31, 2018.   Defendant argues that in Paragraph 6 of SA Norris's affidavit, he "states that as of February 23, 2018, [defendant] was no longer employed by the Jaguars and thus any access to the team's computer network after that date was unauthorized."   Defendant's Motion at 7; *see also* Defendant's Motion at 10 (arguing that this purported representation was also made in Paragraph 11(a) of SA Norris's affidavit).   According to Defendant's Motion and paragraph 3 of his supporting affidavit, this is incorrect, and defendant asserts he "was expected to continue his duties to the team until the expiration of his . . . contract on March 31, 2018." Defendant's Motion at 7.

2.   Defendant submits that SA Norris "omitted the fact the Jaguars stated they did not disclose to [defendant] [that his sex offender status] was the reason for not renewing his contract."   *Id.*   This fact is arguably supported by paragraph 3 of defendant's affidavit, in which he claims that he "was not given a reason for [the non-renewal of his contract] other than my services were no longer needed."

3.   Defendant submits that "regardless of [his] employment status with the Jaguars, he continued to have authority to access the City-owned computer network through his contract employment with SMG." Defendant's Motion at 8.   In defendant's affidavit, he submits that "[d]uring this same 2014 to 2018 timeframe," he was also a contractor for SMG and in that role "was authorized to use software to remotely access the City-owned networks," including by use of TeamViewer software.   Defendant's Aff. ¶ 4.   Presumably, defendant's contractual employment by SMG "during this same 2014 to 2018 timeframe" also ended with the expiration of his final contract on March 31, 2018.   *See* Defendant's Aff. ¶¶ 3-4.

9

4. Defendant submits that SA Norris mischaracterized the nature of the MIRA9120 server.   Defendant's Motion at 9.   Defendant submits that, rather than being a decommissioned or "rogue" server, MIRA9120 "was purchased by the City of Jacksonville/SMG in 2015 to serve as a backup to the other MIRA servers" and it was "installed in the same location as it was found by the Jaguars" by technicians for SMG. Defendant's Motion at 9-10; Defendant's Aff. ¶ 5.   Defendant submits that he did not relocate MIRA9120, that it was a fully operational backup, and had not been decommissioned.   *Id.*

5. Defendant suggests that his access to MIRA9120 on February 23, 2018, and installation of TeamViewer thereon, was legitimate because on that date he "was performing duties in his capacity as a contractor for SMG in preparing to direct the Monster Truck Jam event to be held the following day at the stadium facility."   Defendant's Motion at 10; Defendant's Aff. ¶ 6.

These purported inaccuracies and omissions represent the full extent of defendant's "offer of proof" in support of his request for a *Franks* evidentiary hearing that is supported by his affidavit.   Defendant also advances omitted "facts" in his motion that are *not* supported by his affidavit, including that he "never received any written notice of his contract not being renewed," (Defendant's Motion at 6), and that "the Jaguars' Vice President for IT told SA Norris that [defendant] did have authority to access the Jaguars' networks once he was 'terminated,'" (*Id.* at 8).

Defendant fails to meet the first prong of *Franks* because he has failed to support with any offer of proof several of the facts that he argues were omitted or misrepresented.   More critically, he does not advance even a bald allegation that SA Norris made *any* deliberate or reckless misrepresentations in his affidavit. *Arbolaez*, 450 F.3d at 1294 (defendant "failed to make the necessary 'substantial preliminary showing'" where "[t]here [was] no affidavit . . . alleging that [the affiant]

knowingly or recklessly included false statements"). This is fundamental, because even "conclusory allegations of negligence or innocent mistakes are insufficient." *Leach*, 498 Fed. App'x at 917; *see also United States v. Whyte*, 928 F.3d 1317, 1333 (11th Cir. 2019) ("Omissions made negligently or because of an innocent mistake are insufficient to warrant suppression of the evidence.").

Moreover, to the extent that there were factual inaccuracies in the affidavit, those portions of the affidavit were attributed by SA Norris to information that was provided to him by the Jaguars and upon which SA Norris reasonably relied. *See, e.g.*, SA Norris Aff. ¶¶ 6-10 (describing information contained in the affidavit that was provided to SA Norris by the Jaguars regarding their investigation). SA Norris sufficiently corroborated the reporting by the Jaguars through an independent review of an image of the MIRA9120 hard drive that was conducted by an FBI computer scientist as well as subpoena-based investigation that linked the network intrusions to defendant and his residence. SA Norris Aff. ¶¶ 11-14; 16. Thus defendant has not carried his burden for the additional reason that he has not shown that "it is the agent, and not the informant" who made the purported misrepresentations. *Novaton*, 271 F.3d at 988.

For these reasons, defendant has failed to meet the first prong of *Franks* and is not entitled to an evidentiary hearing solely on that basis. Although there is no need for the Court to look further in denying defendant's request for an evidentiary hearing, defendant also fails to meet the threshold set by the second prong of *Franks*.

11

B.    Under the second prong of *Franks*, defendant is not entitled to an evidentiary hearing because probable cause existed regardless of the truth or falsity of the facts he now disputes.

Giving defendant the benefit of the doubt, and assuming that he *could* make the necessary showing under the first prong of *Franks*, he still would not be entitled to an evidentiary hearing because the facts that he disputes are irrelevant to the finding of probable cause.

As described in SA Norris's affidavit, the network intrusions he was investigating occurred during events hosted by the Jaguars on September 16, November 18, and December 2, 2018.   SA Norris Aff. ¶ 9.   FBI set up a sting on December 16, 2018, to attempt to capture any logins via TeamViewer to MIRA9120. *Id.* ¶¶ 10-11.   During the sting, the TeamViewer software logged a connection from a user with account number 1118559964.   *Id.* ¶ 11(b)(ii).   A subpoena to TeamViewer showed that account 1118559964 had logged into MIRA9120 five times, most recently using an IP address that was attributed to defendant's residence.   *Id.* ¶¶ 11(b)(ii) & 14.   FBI's initial investigation also revealed evidence that defendant was the individual who had installed TeamViewer on MIRA9120 on February 23, 2018, which defendant acknowledges in his affidavit.   *See* Defendant's Aff. ¶ 6.

Defendant now seeks to waste this Court's time by conducting an evidentiary hearing to quibble over facts that are entirely irrelevant to the existence of probable cause in the affidavit.   Regardless of whether defendant's last day with the Jaguars was February 23, or March 31, 2018, whether defendant continued to have some

level of legitimate access to computers in the Jaguars' stadium for some unspecified period of time via his contractual employment with SMG, whether or not the Jaguars told him the real reason his contract was not renewed, and whether MIRA9120 was "rogue" or legitimate, probable cause was set forth in the affidavit to believe that the defendant's access to the computers controlling the video boards via MIRA9120 during events put on by the Jaguars (not SMG) in September, November, and December 2018 was unauthorized.   Defendant does not contend that he continued to have any legitimate authority to access the video boards in late 2018 – when the attacks occurred – nor that he had general authority to access the video boards outside the context of his separate contractual employment with SMG. Moreover, SA Norris's affidavit set forth probable cause to believe that the network intrusions on September 16, November 18, and December 2, 2018, were malicious and not legitimate, in that they "resulted in the inability for the video board system operators to display the desired content."   SA Norris Aff. at ¶ 9(b).

Defendant misses the mark by focusing exclusively on whether he had legitimate access to MIRA9120 in February-March 2018 and whether he had a legitimate reason for installing software on MIRA9120 on February 23, 2018.   Even crediting every claimed misrepresentation or omission as true – and also inferring without basis that those purported misrepresentations or omissions were deliberately or recklessly made by SA Norris – there would be no impact on probable cause, because the unlawful intrusions occurred six months or more after defendant's

13

contractual employment for the Jaguars had been terminated.   In other words, these purported misrepresentations and omissions are immaterial to probable cause.

## II.   The affidavit demonstrated probable cause that a violation of Section 1030 had been committed

Defendant nestles into his argument for a *Franks* hearing a separate argument that the affidavit did not sufficiently allege probable cause to believe there was a violation of Section 1030,[1]  which was the statutory authority for the warrant. Defendant's Motion Section III(a)(ii).   Defendant centers this argument on the fact that SA Norris described the attack on the Jumbotron as a "Denial of Service (DoS)" attack.   *Id.* at 8.   According to defendant (once again, presenting no authority),

> [a] DoS attack is a form of cyber attack where someone makes a network unavailable to its intended users by disrupting its connection to the internet.   Typically such an attack is accomplished by flooding the targeted network with information so that it is unable to respond to requests from other users.

---

[1] In this portion of his motion, defendant does not even attempt to make an offer of proof as to the purported inaccuracies in the affidavit.   Defendant argues paragraph 9(b) of SA Norris's affidavit is inaccurate because, according defendant (unsupported by proof), on January 16, 2019, SA Norris received an email from someone at the Jaguars outlining the steps that would need to be taken to replicate the issue with the video boards.   Defendant's Motion at 8.   Defendant ignores that the entirety of paragraph 9 of SA Norris's affidavit explicitly is summarizing "documents of the [Jaguars'] investigation into the incident" that were provided to SA Norris "[o]n December 10, 2018," describing investigation by the Jaguars that occurred on December 3, 2018.   SA Norris Affidavit ¶ 9.   That is more than one month before the purported January 16, 2019, email.   Just because at some later date the Jaguars were able to replicate the issue does not render the summary of the earlier investigation false.   There is no inconsistency here or misrepresentation.

14

*Id.* Defendant submits that, due to his purportedly superior definition of a DoS attack, defendant's actions in repeatedly disrupting the Jumbotron "was not a DoS attack" and therefore could not have been a violation of Section 1030.

As described in the Statutory Authority section of SA Norris's affidavit, "Section 1030 . . . prohibits intentionally accessing a protected computer or computer network without authorization."   SA Norris Aff. ¶ 4.   SA Norris the described that Section 1030(a)(2)(C) makes it "unlawful for an individual to 'intentionally access a computer without authorization or exceed authorized access in order to obtain information from any protected computer," and that Section 1030(a)(5)(C) makes it "unlawful for an individual to 'intentionally access a protected computer without authorization, and as a result of such conduct, [cause] damage and loss."   *Id.* SA Norris described that, under the statute, "'damage' means any impairment to the integrity or availability of data, a program, a system, or information."   *Id.* ¶ 4(b).

The magistrate judge, upon reviewing the affidavit, found probable cause to believe that evidence of these violations would be found in defendant's residence, including computers inside of the residence.   Defendant now argues that the commands he transmitted to the computers controlling the Jumbotron "did not affect the network system's ability to function," (Defendant's Motion at 8), however, this is incorrect.   SA Norris described in his affidavit that, according to the Jaguars, during the three separate network intrusions "the video boards had experienced an outage from their standard operating design," and "the outage resulted in the inability for

the video board system operators to display the desired content."   SA Norris Aff.
¶ 9(a) & (b).   This plainly meets the definition of "damage" as described in
SA Norris's Affidavit, and as described in Section 1030.

SA Norris's affidavit described the nature of the network intrusion and its
result.   Defendant's submission of a differing definition of a DoS attack and claim
that what he did was *not* a DoS attack is a red herring.   It is irrelevant to the finding
of probable cause whether or not it was a "DoS attack" (it was) as that is not a term
of art in Section 1030.   The affidavit laid out probable cause to believe that two
offenses under Section 1030 had been committed, and that the evidence would be
located in defendant's residence.[2]   There is no basis for suppression.[3]

## III.   The issued warrant was sufficiently particular and not overbroad

Impliedly, defendant believes that agents should only have been authorized to
search for documents related to the specific dates of the intrusion (that is,
September 16, November 18, and December 2, 2018), and limited on those dates
specifically to evidence of defendant's use of the TeamViewer application to
remotely access the MIRA9120 server.   *See* Defendant's Motion at 11-12 (arguing

---

[2]  Defendant also submits that "a specific subsection of 18 U.S.C. § 1030 is not
identified in SA Norris's application" (Defendant's Motion at 9), apparently
overlooking the fact that SA Norris's affidavit, which is a part of the application,
specifically identified Sections 1030(a)(2)(C) and 1030(a)(5)(C) as the statutory
authority for the warrant.   SA Norris Aff. ¶ 4.

[3]  Even if this Court were to determine that there was not probable cause for the
warrant, the executing agents were entitled to rely on it.   *United States v. Leon*, 468
U.S. 897 (1984); *United States v. Taylor*, 935 F.3d 1279, 1288-93 (11th Cir. 2019).

that "there were three specific dates under investigation" and "[t]here was no claim or reason to believe that any other software program was used to gain access or that any virus, malware, or malicious code was uploaded to the team's network"). Defendant cites no legal authority to suggest that such a hyper-restrictive search was all that should have been authorized.

In fact, the law is to the contrary.   For example, in *United States v. Richards*, the court reasoned that "[o]ne would not ordinarily expect a warrant to search filing cabinets for evidence of drug activity to prospectively restrict the search to 'file cabinets in the basement' or to file folders labeled 'Meth Lab' or 'Customers.'   And there is no reason to so limit computer searches."   659 F.3d 527, 538 (6th Cir. 2011); *see also United States v. Conrad*, No. 3:12-cr-134-J-34TEM, 2013 WL 4028273, at *8 (M.D. Fla. Aug. 7, 2013) (quoting *Richards*, 659 F.3d at 539, and explaining "[f]ederal courts applying a reasonableness analysis on a case-by-case basis 'have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers'").   The *Richards* Court concluded "[i]n other words, in general '[s]o long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence.'"   *Id.* at 540.

With regard to the timeframe of the search, defendant's contention ignores the actual facts of the investigation to that point, which were that defendant was believed

17

to have installed TeamViewer on MIRA9120 in February 2018, and that it was unknown to what extent defendant had unlawfully accessed the Jaguars' network on other occasions or undertaken additional actions to facilitate his crime.   Regardless of whether he had legitimate access to MIRA9120 or the authority to install remote access software in February 2018, this was the setup for his later intrusions, and thus part of the overall narrative of this case, as well as evidence of defendant's knowledge, intent, and lack of mistake in committing the later intrusions.

But additionally, defendant ignores that the application to the warrant specifically requested authorization to search for violations of Section 1030, and the warrant itself repeatedly referenced seizure from defendant's computers of evidence "as it relates to the crime under investigation."   Where a warrant is "already adequately particularized based on the subject matter limitation to evidence related to [a particular crime], . . . an additional temporal limitation was not required." *United States v. Harvey*, CRIMINAL ACTION NO. 1:15-cr-00053-TWT-RGV-1, 2015 WL 9685908, at *14 (N.D. Ga. Nov. 30, 2015) (report and recommendation adopted by *United States v. Harvey*, 2016 WL 109984 (N.D. Ga. Jan. 8, 2016)) (citing *United States v. Lee*, Criminal Action File No. 1:14-cr-227-TCB-2, 2015 WL 5667102, at *10 (N.D. Ga. Sept. 25, 2015)); *see also Lee*, 2015 WL 5667201, at *10 (warrants did not need to be temporally restricted where they "were already adequately particularized based on the subject matter limitation").   The warrant was particularized based on its subject matter, no temporal limitation was required, and

18

in any event, the extreme limitation suggested by defendant is totally unreasonable.

Defendant next claims generically that the residential search warrant was overbroad, although he utterly fails to identify any item in "Attachment B" that would not have been of evidentiary value.   *Cf. Lee*, 2015 WL 5667102 at *9 ("The fact that [a] warrant call[s] for seizure of a broad array of items does not, in and of itself, prove that the warrant fails to meet this requirement of particularity." (quoting *United States v. Sugar*, 606 F. Supp. 1134, 1151 (S.D.N.Y. 1985))).   Defendant also claims that the warrant "allowed for the unrestricted seizure of all forms of electronic systems and data without regard to the type of information sought and without any limitation on the timeframe relevant to the charge under investigation." Defendant's Motion at 12.   This is false.   Attachment B paragraph 1 plainly allows for the seizure of "[c]omputers and electronic storage media" and then authorizes the search of those items and seizure of an enumerated list of items of evidentiary value, listed in paragraph 4 of Attachment B.   Each of the evidentiary items listed paragraph 4 of Attachment B has readily apparent evidentiary value in this case.

1. Item 4(a) allowed for the search of "evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted . . . ."   In other words, item 4(a) allowed for the seizure of attribution evidence that would identify who was using a device at the time the crime was committed. Attribution evidence may be specific to a particular date and time, or may be broader to the extent that it identifies the person who was the regular or exclusive owner or user of a computer.   Likewise, items 4(e) and 4(i) constitute attribution evidence.

2. Item 4(b) allows for seizure of computer software, including software used for remote access.   The existence of remote access software on

19

defendant's computers plainly was of evidentiary value in the investigation.   The existence of pertinent software on a device during the setup for the intrusions, during the intrusions themselves, or at the time the device was seized is of evidentiary value.

3. Item 4(c) relates to the presence of malicious software that could allow others to control a computer.   This is plainly relevant to eliminate the possibility that some other actor remotely used defendant's computer to commit the intrusions.   The same logic applies to item 4(d) (evidence of the absence of malicious software).

4. Item 4(f) seeks evidence of the computer user's "state of mind as it relates to the crime under investigation."   Again, this evidence is limited to state of mind *as it relates to the crime under investigation*, and is therefore appropriately subject matter and time-limited.   Plainly, the perpetrator's state of mind, intent, and motive are of evidentiary value.

5. Item 4(g) relates to the attachment to a computer of other storage devices.   This has evidentiary value because it may provide investigative leads showing where additional evidence may be stored.

6. Item 4(h) relates to counterforensic programs designed to eliminate data from a computer.   The presence of such programs would be indicative of consciousness of guilt and therefore are relevant evidence.

7. Item 4(j) allows the seizure of passwords and the like, which are necessary to fully execute the warrant.   Likewise, item 4(k) allows for seizure of documentation and manuals necessary to execute the warrant.   Item 4(n) allowed for seizure of contextual information to understand the evidence described in other items of Attachment B.

8. Item 4(l) allows for seizure of information about Internet Protocol (IP) addresses used by a computer.   As described in the affidavit, the defendant's IP address was pertinent to establishing probable cause for the warrant and is therefore of evidentiary value.   Likewise, 4(m) allowed for seizure of records regarding the computer user's internet activity.   Given that defendant used multiple websites and the internet to complete the setup for the crime and the intrusions, this was obviously of evidentiary value.

Defendant does not specify which of the above items he finds objectionable (other than malicious software, which, as described above, is of evidentiary value), but

20

simply claims that he was prejudiced because agents viewed images of a child relative of defendant that constitute child sex abuse material on a hard drive.[4] Defendant's Motion at 12.

Defendant first ignores that the images on the hard drive are not the basis for any charges in his indictment.   Second, defendant fails to mention that upon discovering child sex abuse material on his iPhone 7, agents immediately discontinued their search and sought a stand-alone warrant to search the device for child sex abuse material.   *See* Case No. 3:19-mj-1284-JBT (search warrant dated August 2, 2019, authorizing search of defendant's iPhone 7 for evidence of receipt and possession of child pornography).   Agents then discovered child sex abuse material on the hard drive about which he complains, which is a separate device seized from defendant's residence, and again immediately discontinued their search and sought a stand-alone warrant to search that device for child sex abuse material. *See* Case No. 3:19-mj-1375-JBT (search warrant dated October 19, 2019, authorizing

---

[4] The images from the hard drive are a close-up image and a video of a pre-pubescent male child bathing and are closely focused on the child's penis.   Information has been provided to the FBI that the images were taken by the child's mother to show his surgical scars.   Given defendant's demonstrated sexual interest in male children, it appears that defendant's interest in possessing these images was sexual in nature. Defendant also argues that this particular computer "contained content that all predated 2011, a fact easily discernable by any forensic examiner," which ignores the fact that the examiner has to examine the computer in order to determine the era from which the content is dated, and also ignores that dates associated with computer files may be inaccurate.   Just because it may have been "easily discernable" when particular files dated from does not mean that there did not need to be some sort of review to discern that fact.

the search of an ACOM hard drive for evidence of receipt and possession of child pornography).   Agents also found child sex abuse material on the computer seized by consent from defendant's storage locker.   Ultimately, the FBI obtained search warrants to search each and every computer seized from defendant's residence for evidence of receipt or possession of child sex abuse material.   *See* Case Nos. 3:19-mj-1367-JBT through 3:19-mj-1385-JBT.[5]

In any event, agents were authorized to review photos and videos and other indicia of ownership and control of the computers because that evidence (attribution evidence) was essential to determining who was controlling the computer(s) used to commit the network intrusion they were investigating.   Attribution evidence can reasonably date from any time and may be indicative of whether a person was the sole or joint user of a device, and if the device was jointly used, who was using it on a particular date and time.   Once agents inadvertently discovered child sex abuse material on the iPhone 7 and the ACOM hard drive, they immediately ceased their review and sought warrants to review the devices for that evidence.   This fact alone demonstrates that the agents were conducting a reasonable review for evidence, and not the limitless review of which defendant complains.

---

[5] Even if defendant's arguments had merit – which they do not – he does not contend that the search of his iPhone 7 or the computer from his storage locker – both of which also contained child sex abuse material – were unreasonable.   Based upon finding child sex abuse material on those two devices, agents had developed probable cause to seek warrants to search each and every device for such material, and thus the discovery of the material on the ACOM hard drive was inevitable.

**IV.    The search did not exceed the scope of the warrant**

Defendant next complains generally about scope issues presented by search warrants for computers and electronic devices without identifying any way in which agents exceeded the scope of the authorized search.   Defendant's Motion at 12-13.

At the bottom of page 13, defendant complains that "even a valid search warrant does not give police permission to search persons present at the site of the search," citing *Ybarra v. Illinois*, 444 U.S. 85 (1979).   Defendant then advances the argument that, based on *Ybarra*, his phone – which he acknowledges was in plain view in his hand while he was inside the residence at the time the warrant was executed – was not legally seized.

First, defendant misconstrues the holding of *Ybarra*, which in fact supports that his person was lawfully searched.   In *Ybarra*, the court suppressed the search of the person of a patron of a tavern who was not the subject of the investigation but happened to be present when a warrant to search the tavern was executed.   444 U.S at 88-89.   Ybarra was charged with possessing heroin based on that search and moved to suppress the search warrant as to himself.   The Supreme Court in granting the motion stated that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probably cause to search that person."   *Id.* at 91.   The Supreme Court also noted, however, that there *was* probable cause to search the tavern's bartender, who was the subject of the investigation.   *Id.* at 92.   Defendant is not like Ybarra – he is like the bartender.

23

He was the subject of this investigation, and therefore a search of his person while he was inside of his residence was reasonable.   Moreover, it is well-known that people routinely keep cellular telephones – which agents were explicitly authorized to seize pursuant to the warrant in this case– on their person, so defendant's person was a reasonable place to search for his phone.

In this case, however, defendant's phone was *not* seized as a result of a search of his person.   As he himself acknowledges in the motion, his iPhone 7 was seized from his hand while out and in plain view inside of his residence.   Defendant's Motion at 13.   Agents did not have to even pat him down to find it.   Defendant's proposed interpretation of the law would mean that officers executing a residential search warrant for drugs could not seize a kilogram of cocaine if it were in the defendant's hands.   That plainly is not the law, and it is not reasonable.   There is no basis to suppress the seizure of the phone.[6]

## V.   Agents provided a copy of the warrant, and even if they had not, this is not a basis to suppress the evidence in this case

As defendant notes, Rule 41(f)(1)(C) requires that "[t]he officer executing the [search] warrant must give a copy of the warrant and a receipt for the property taken to the person from whom" the property was taken.   Defendant claims to have

---

[6] Defendant also argues, bizarrely, that SA Norris should be faulted for not disclosing in his affidavit for the residential search warrant what the results were of the search of the iPhone 7, which was seized *during the execution of the residential search warrant*.   Defendant's Motion at 13-14.   SA Norris is not clairvoyant and had no way of knowing what the results would be of the search of the iPhone 7 at the time he authored his affidavit for the residential search warrant.

"requested a copy of the warrant several times before and during the search" and claims that a copy of the warrant, but not its attachments or the supporting affidavit, were left at his residence after the search.   Defendant's Motion at 14 (stating he did not receive "either attachment or the affidavit until they were produced in discovery").   Defendant submits in his motion (and attests to in paragraph 8 of his attached affidavit) that he "demanded to see a copy of the warrant" when he was allowed back inside of his home after being interviewed in a law enforcement vehicle.   Defendant claims that SA Norris "told me I was not allowed to see the attachments," referring to Attachment A and Attachment B.   Defendant's Aff. ¶ 8. Defendant argues that he was cooperative with law enforcement agents and, on this basis, the entire results of the residential search warrant should be suppressed. Defendant's Motion at 14-15.

To support his argument, defendant relies upon the Ninth Circuit's opinion in *United States v. Gantt*, 194. F.3d 987 (9th Cir. 1999), while acknowledging that the ongoing validity of this opinion was "called into question" by the Supreme Court in *Groh v. Ramirez*, 540 U.S. 551 (2004).   Defendant does not discuss *United States v. Grubbs*, 547 U.S. 90 (2006).   In *Grubbs*, the Supreme Court plainly rejected the holding in *Gantt* upon which defendant relies, stating "[i]n fact . . . neither the Fourth Amendment nor [Rule 41] imposes such a requirement" that "the executing officer must present the property owner with a copy of the warrant before conducting his search."   547 U.S. at 98-99; *see also United States v. Neth*, No. 6:09-cr-210-Orl-19GJK,

2010 WL 1257695, at *10 (M.D. Fla. Mar. 30, 2010) ("[T]he Fourth Amendment does not require an executing officer to present a property owner with a copy of the warrant before conducting or during his search of the premises." (citing *Grubbs*, 547 U.S. at 98-99)).   The Supreme Court further stated that "[t]he absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches."   547 U.S. at 99. Furthermore, "[t]he Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant," but rather protects property owners beforehand by requiring review of the warrant by a judicial officer and afterward by providing "a right to suppress evidence improperly obtained and a cause of action for damages."   *Id.*

If this Court were to find that a hearing were required on this issue, the United States expects it would present testimony from agents that defendant did not in fact repeatedly request to see the warrant, and furthermore that a copy of the warrant and its attachments was left in defendant's residence.   The affidavit was not left in the residence, and defendant cites no authority whatsoever to suggest he was entitled to it on the date of the search.   Rule 41 plainly describes that the "warrant," which would include its attachments, must be left.   The affidavit is not part of the warrant.

## **CONCLUSION**

Defendant has not set forth a sufficient basis to warrant a *Franks* evidentiary hearing and none should be granted.   Additionally, defendant has also not demonstrated that the search warrant lacked probable cause, that it was overbroad, that it was insufficiently particular, that its scope was exceeded upon execution, or that he was denied a copy of the warrant at an appropriate time.   Defendant's motion to suppress should be denied.

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:     */s/ Laura Cofer Taylor*
LAURA COFER TAYLOR
Assistant United States Attorney
USAO No. 170
300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
Telephone:      (904) 301-6300
Facsimile:      (904) 301-6310
E-mail:     laura.c.taylor@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Eric Roper, Esq.

*s/ Laura Cofer Taylor*
LAURA COFER TAYLOR
Assistant United States Attorney