UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.  3:20-cr-26(S2)-BJD-LLL

SAMUEL ARTHUR THOMPSON

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL

Trial in this case commenced on November 6, 2023 (Doc. 272) and concluded on November 17, 2023, with the jury returning a verdict of guilt on all ten counts of the Second Superseding Indictment (Docs. 285, 293).  On December 1, 2023, the clerk docketed defendant's motion under Fed. R. Crim. P. 33 for a new trial, which was timely filed.  Doc. 287.  In his motion, defendant argues that his trial was not fair because he did not have a computer forensic expert at trial and because of prosecutorial misconduct.  Both grounds are meritless.

### LEGAL STANDARD

Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Although the decision of whether to grant a new trial is within the Court's discretion, doing so is disfavored:

> While the district court's discretion is quite broad, there are limits to it.  The court may not reweigh the evidence and set aside the verdict because it feels some other result would be more reasonable.  The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.  Motions for

> new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really exceptional cases.

*United States v. Cox*, 995 F.2d 1041, 1043 (11th Cir. 1993) (citation omitted); *see also Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004).

## ARGUMENT

**A.   Defendant's lack of a computer forensics expert at trial was a result of his own dilatory failure to act.**

This is not a "really exceptional case[]" such that a new trial is warranted. Indeed, this Court was aware of the status of defendant's *in camera* request for a forensic expert in advance of the trial and repeatedly denied defendant's motions to continue based upon not being ready with his expert. Defendant's own motion makes clear that the Court previously granted funds for a computer forensic expert as far back as October 2021 – more than two years before the trial took place. Doc. 287 at 2. Defendant apparently did not like that expert and in August 2022 requested funds for a different one. *Id.* at 2-3. According to defendant, the Court repeatedly required him to comply with the rules to demonstrate that the expert was needed. *Id.* at 2-4. During the pendency of that *ex parte* litigation, defendant apparently changed his mind again and withdrew his motion to retain the second expert in January 2023. *Id.* at 4.

In April 2023, defendant began moving for a third expert that he liked better than the first two. *Id.* at 5. However, the Court initially denied his request because he failed to articulate how the expert would support his defense. *Id.* Ultimately,

defendant apparently provided sufficient information to justify the third expert, and funds were granted on September 25, 2023. *Id.* This was sufficient time for defendant's expert to review the evidence and be prepared to testify.

Despite being granted these funds in September, at the time trial was supposed to start more than a month later, defendant had never even attempted to set up a time for his expert to review the evidence. Undersigned counsel repeatedly made it clear on the record that the FBI would accommodate defendant's expert on a moment's notice. Undersigned counsel also arranged for defendant to have full access to forensic copies of all of the digital evidence in this case on October 17, 18, 19, and 20 from 9am-4pm each day at the federal courthouse. Doc. 234 at 3-4. During these review days, agents from the FBI repeatedly inquired with defendant about when his expert would be coming to review the evidence, but defendant never indicated if or when that would happen, or even that he was working toward that review. During at least some of the review days, FBI Computer Scientist McCrohan was made available to assist defendant with his own review.

In other words, it was defendant's failure to sufficiently justify his requests for forensic experts in a timely manner, his repeated horse-changing mid-race, and his failure to take any action whatsoever once funds were granted that left him without an expert on trial day. Trial was scheduled for a date certain of November 6, 2023, since April 2023. This was plenty of time for defendant to retain an appropriate expert and prepare for trial.

Furthermore, there was no error in defendant not re-calling FBI Computer Scientist McCrohan at trial. As discussed above, CS McCrohan was made available to defendant to assist defendant's review of the digital evidence. Defendant had an opportunity to ask all of the questions he wanted of Mr. McCrohan at trial during cross-examination. And while the government stated in trial that it would not waive the requirement that defendant comply with *Touhy*, the court nonetheless indicated that it would permit defendant to call government witnesses without compliance. Moreover, defendant clearly was aware of the requirement to submit a *Touhy* request if he wanted to call government witnesses – and knew how to do it – because he did so in order to be able to all Special Agent Norris as a witness at the suppression hearing. In other words, it is defendant's own fault that he did not comply with *Touhy*, but he got to question CS McCrohan anyway, and this Court would have let him recall CS McCrohan if he had wanted to – but defendant did not do that.

**B.    There was no prosecutorial misconduct at trial.**

Defendant's second argument is that there was prosecutorial misconduct at trial because witness B.C. testified that defendant played a "game" where he would grab B.C.'s penis and that defendant groomed him by bringing scuba equipment to B.C.'s home pool. Doc. 287 at 9. Defendant asserts – with nothing to back it up – that B.C. was "tainted with information specific to this case" that was used to "manufacture" testimony. *Id.*

First, defendant had the opportunity to cross-examine B.C. at trial and certainly could have asked B.C. if the government put words in his mouth, suggested

4

that B.C. make things up, or engaged in any other sort of nefarious conduct. Defendant did not explore this topic, presumably because he knew that B.C.'s testimony was truthful and not invented by the government for trial. Additionally, had defendant wished to impeach B.C. by showing B.C. the transcript of B.C.'s previous testimony, defendant could have done so (but he apparently chose not to, because he did not do that despite having the transcript). Defendant's assertions of misconduct are baseless, and he had the opportunity to explore his allegations in his cross-examination of B.C.

Defendant also argues that the government "tainted" the jury by showing disturbing text messages between him and a woman in the Philippines where defendant discussed an 8-year old child's "big old boner." *Id.* at 9-10. Defendant apparently takes issue with the government's reasonable argument that defendant was discussing such things because he has a sexual interest in children (including, specifically, that child). *Id.* at 10. Defendant argues that other messages – which were in the exhibit and which he could have highlighted for the jury had he chosen to – showed that the messages had a different context. *Id.* Once again, defendant's choice or failure not to argue about those messages that, according to him, put that discussion in a different light, does not amount to prosecutorial misconduct nor to the government "tainting" the jury.

In any event, those messages were far from the government's most critical evidence in the case, which also included child sex abuse material produced in defendant's home, by defendant, depicting identified children in defendant's care

5

who testified at trial that defendant molested them, with defendant's voice captured on the audio, and that was stored on defendant's iPad, among a mountain of clear evidence that defendant committed all of the crimes of which he was accused and of which the jury convicted him.

## CONCLUSION

There was no fundamental unfairness in this trial and no basis for this Court to grant defendant a new trial.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:   *s/ Laura Cofer Taylor*
        LAURA COFER TAYLOR
        Assistant United States Attorney
        USA No. 170
        300 North Hogan Street, Suite 700
        Jacksonville, Florida 32202-4270
        Telephone:  (904) 301-6300
        Facsimile:  (904) 301-6310
        E-mail:    laura.c.taylor@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2023, I filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Christopher Eric Roper, Esq.
>*Standby Counsel for Defendant*

I hereby certify that on December 15, 2023, a true and correct copy of the foregoing document and the notice of electronic filing will be sent by United States Mail to the following non-CM/ECF participant(s):

>Samuel Arthur Thompson, pro se
>Baker County Detention Center
>P.O. Box 1629
>MacClenny, Florida 32063

>*s/ Laura Cofer Taylor*
>LAURA COFER TAYLOR
>Assistant United States Attorney